# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 3:23-CR-00175 |
| ) | JUDGE TRAUGER |
| v. ) | |
| ) | |
| PATRICK CASH ) | |

## PATRICK CASH'S MEMORANDUM ADDRESSING THE SENTENCING FACTORS

Through counsel, Patrick Cash files this memorandum setting forth the factors relevant to sentencing in his case. Mr. Cash respectfully requests this Court accept the terms of the plea agreement (D.E. 34) and impose a three-year sentence of probation. Based on the sentencing factors, this sentence is sufficient but not greater than necessary to satisfy the statutory objectives of sentencing under 18 U.S.C. § 3553(a).

### I. PROCEDURAL BACKGROUND

Law enforcement arrested Mr. Cash on November 8, 2023, at his Nashville home. He was arrested as a result of a federal investigation where authorities alleged he communicated threats via interstate communication in violation of 18 U.S.C. § 875. At an initial appearance on the same day, undersigned counsel was appointed to represent Mr. Cash. (D.E. 10) Magistrate Judge Jeffrey Frensley released Mr. Cash on conditions on November 21, 2023.

On June 18, 2024, Mr. Cash appeared before this Court and changed his plea to guilty to the one-count charged in the Information. (D.E. 34) This plea resulted from an agreement with the Government where the parties agreed that a three-year sentence of probation was sufficient punishment. Roughly two months later, this Court revoked Mr. Cash's release due to violating

his release conditions. (D.E. 38) Since August 13, Mr. Cash has been in the custody of the United States Marshals Service awaiting sentencing.

## II. DISCUSSION

### a. Mr. Cash's personal history and characteristics reveal a lack of criminal history and a need for community and coping skills.

Mr. Cash's upbringing can be best described as "normal". The younger of two sons born to Barry and Derri Cash, his childhood was by all metrics, unremarkable. His father Barry was a banker, and his mother was a teacher. They provided Patrick and his brother, Dylan a stable life. Beginning in Louisville, Kentucky, the family moved to Hendersonville, TN when Mr. Cash turned five years old. The family lived in an upper-middle class neighborhood that lacked the violence and substance abuse issues that riddled other areas of the Nashville metro. These issues certainly were not present in the home.

In school, Mr. Cash was a regular student. He maintained good grades throughout grade school and even played football and soccer in high school. Mr. Cash had a particular affinity for soccer and eventually coached youth soccer later in his adulthood. He is a college graduate and has generally maintained steady employment while in the community.

Mr. Cash is the only member of his immediate family who lives in the Nashville area. Before six months ago, his mother, father, and brother all lived in the Tampa Bay area and had been living there for years. Mr. Cash had no real relationships with anyone in Nashville and was fairly disconnected from his family. The lack of personal connections played a huge role in the nature and circumstances of his conduct.

In 2023, Mr. Cash lost his job at Blankenship CPA Group. There, he had been an IT Technician for a little over a year. When he lost his job, he spiraled. For months, he described himself as "losing his way". He got involved with online hate groups and became interested in

2

disseminating information he learned from those groups. He engaged in this behavior for months while he was searching for work. He had not been in contact with his parents even though they were attempting to contact him. His mother and father knew he had lost his job, but did not know the seriousness of his emotional distress. Lacking any emotional support, Mr. Cash further spiraled.

His online consumption of hate material eventually led to him committing the underlying conduct. Mr. Cash had no intentions on actually hurting the victims let alone anyone else. He did not even have the means. He had very limited funds, no firearms or further access to any weapons. He made those calls out due to mental health issues and hate-fueled anger. Unfortunately, his conduct landed him in the position he is in today and he will have to accept the consequences of those actions everyday of his life moving forward.

    **b. A three-year sentence of probation is adequate and fair punishment for Mr. Cash's conduct.**

Probation is appropriate. Congress intended for courts to consider a non-custodial option when selecting a sentence for offenders like Mr. Cash. When Congress enacted the Sentencing Reform Act and created the sentencing guidelines system, the federal courts were issuing sentences of probation at a rate of 37 percent. In that context, Congress directed the Sentencing Commission to "ensure that prison resources are, first and foremost, reserved for those violent and serious criminal offenders who pose the most dangerous threat to society," while permitting increased of restitution, community service, and other alternative sentences in all other cases. *See* Pub. L. 98-473, §239, 98 Stat. 1987, 2039 (1984). Thus, Congress intended that non-custodial sentences be used relatively frequently under the sentencing guidelines, at a rate even greater than 37 percent.

3

As Congress recognized, non-custodial sentences are a uniquely effective corrective tool for certain kinds of offenders. Non-custodial supervision "take[s] advantage of an opportunity for reformation which actual service of the suspended sentence might make less probable." *Berman v. United States*, 302 U.S. 211, 213 (1937). As a Sentencing Commission study has concluded: "alternatives [to incarceration] divert offenders from the criminogenic effects of imprisonment which include contact with more serious offenders, disruption of legal employment, and weakening of family ties." U.S. Sentencing Commission, Staff Discussion Paper, *Sentencing Options under the Guidelines*, at 19 (Nov. 1996)[1]

The advantages of non-custodial supervision are especially pertinent in the case of an "unhardened offender." *Roberts v. United States*, 320 U.S. 264, 272 (1943). Congress has indicated that, at least when rehabilitation is the primary goal of a sentence, "probation is generally considered to be preferable to imprisonment." S. Rep. No. 225, 98th Cong., 1st Sess. 37-150, at 91.[2]

In sum, in the Sentencing Reform Act, Congress embraced the traditional role of non-custodial sentences, encouraged their increased usage, and directed the Sentencing Commission to create guidelines to guide the judge's decision — presumably guidelines that would preserve the flexible, individualized, and intelligent nature of the decision while channeling the judge's discretion by detailing the relevant criteria.

Besides Congress, the U.S. Supreme Court recognizes that non-custodial sentences are punitive and substantially restrict an individual's liberty. *Gall v. United States*, 128 S.Ct. 558,

---

[1] This draft report is available at: http://www.ussc.gov/Research/Working_Group_Reports/Simplification/SENTOPT.PDF.

[2] This report is available at: http/www.ussc.gov/general/20081222_Data_Overview.pdf.

595-96 (2007) (approving sentence of probation for drug trafficker with Guideline range of 30-37 months). Similarly, the U.S. Court of Appeals for the Sixth Circuit has recognized that district courts may opt to pursue the sentencing goals of protecting society and deterring future criminal conduct through extensive terms of supervision, rather than through incarceration. *See, e.g., United States v. Grossman*, 513 F.3d 592, 597 (6th Cir. 2008) (upholding a 4 ½ year downward variance coupled by a ten-year supervision term).

Mr. Cash has no criminal history. Were it not for the conduct itself, Mr. Cash would have received a downward adjustment for being a zero-point offender. See U.S. Sentencing Commission Guidelines Manual, 4C1.1. While his conduct was concerning, it is nonviolent and can be justly punished with a three-year term of probation.

### c. A sentence of probation is fair, just and will allow for Mr. Cash to participate in mental health treatment programs.

The Court must consider the need for a sentence to provide just punishment, promote respect for the law, and provide the defendant with needed treatment. 18 U.S.C. § 3553(a)(2). Research by the U.S. Sentencing Commission shows that Ms. Cash possesses numerous characteristics that render her unlikely to commit another offense:

- the nature of Ms. Cash's offense (threat via interstate commerce)
- education level (college graduate)
- consistent employment
- age

*See* U.S. Sentencing Commission, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines (May 2004), at 11-13; U.S. Sentencing Commission, *Recidivism and the "First Offender"* (May 2004).

5

Mr. Cash is a 33-year-old college graduate who has never been charged with a crime. Prior to the underlying conduct taking place, he rented his own apartment, maintained steady employment before being fired from the job that caused him emotional distress, and otherwise took care of himself as a normal, single adult would be expected to. Even after he was released on pretrial conditions, he gained and maintained employment. He did so until the day his pretrial release was revoked by this Court.

Allowing him to remain in the community under this Court's watch, he can try and get a job, go back to his apartment, and most important, engage in mental health treatment. Long-term mental health treatment would be extremely beneficial for Mr. Cash and will help him learn to cope with difficult life and environmental stressors. An offender's well-being is promoted by improving his psychological condition and reducing the risk that he will be subject to criminal punishment. To the degree that it is successful, it has the potential to promote the well-being of the public by reducing the risk of recidivism. Robert F. Schopp, *Mental Illness, Police Power Interventions, and the Expressive Functions of Punishment*, 39 New Eng. J. on Crim. & Civ. Confinement 99, 104 (2013).

But Mr. Cash is not and was never a danger to the community. He never had intentions to hurt anyone, even though he made threats. Save for his presence at a far-right rally, his performance on pretrial release did not reflect that of someone who is dangerous. His association with the Goyim Defense League *was* dangerous, but he realizes that and has no plans to engage with that group in the future.

### d. A sentence of probation will deter Mr. Cash from committing further crime.

The Court also considers the issue of providing general deterrence to criminal conduct. 18 U.S.C. § 3553(a)(2)(B). As recognized by the U.S. Department of Justice, increasing the

6

severity of punishment does little to deter crime. U.S. DOJ, Office of Justice Programs, National Institute of Justice, *Five Things About Deterrence* (May 2016). Deterrence is the idea that criminal penalties discourage people from committing crimes. Andrew Ashworth, *Sentencing & Criminal Justice* 64-68 (3d ed. 2000). The empirical evidence is unanimous that there is no relationship between sentence length and general or specific deterrence, regardless of the type of crime. *See* Andrew von Hirsch et al., *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999) (concluding that "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance," and that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects"); Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 2829 (2006) ("[I]ncreases in severity of punishments do not yield significant (if any) marginal deterrent effects. . . . Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence."); David Weisburd et al., *Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crimes*, 33 Criminology 587 (1995) (finding no difference in deterrence for white collar offenders between probation and imprisonment); Donald P. Green & Daniel Winik, *Using Random Judge Assignments to Estimate the Effects of Incarceration and Probation on Recidivism among Drug Offenders*, 48 Criminology 357 (2010) (study of over a thousand offenders whose sentences varied substantially in prison time and probation found that such variations "have no detectable effect on rates of re-arrest," and that "[t]hose assigned by chance to receive prison time and their counterparts who received no prison time were re-arrested at similar rates over a four-year time frame").

7

Mr. Cash's lack of any criminal history supports his position that a sentence of probation is warranted and will deter him from further crime. Minimal or no prior involvement with the criminal justice system is a "powerful predictor" of a reduced likelihood of recidivism. *Germosen*, 473 F. Supp. 2d at 227; *see, e.g., United States v. Baker*, 502 F.3d 465 (6th Cir. 2007) (affirming sentence of probation for firearms offender in Criminal History Category II where he had family obligations, had done very well on pretrial release, and his crime was an isolated outburst that did not reflect continued dangerousness); *United States v. McCracken*, 348 F.3d 811 (9th Cir. 2003) (affirming sentence of probation where three-year course of credit-card fraud was an aberration); *Germosen*, 473 F. Supp. 2d at 230 (imposing probation where the offense carrying an offense level of 21 was an aberration).

As reflected above, a lengthy custodial sentence provides no more general deterrence for this offense than probation does.

> **e. The time that Mr. Cash has served because of a pretrial violation is sufficient and will deter him from future crime.**

Mr. Cash has been in the custody of the United States Marshals Service since August 12, 2024. More specifically, he has been housed in the Grayson County Detention Center in Leitchfield, Kentucky. For nearly four months, his freedom has been stripped away due to his actions of violating the conditions of his pretrial release. This period of time represents the longest amount of time he has ever been incarcerated and away from the community. Mr. Cash has used the last few months to reflect on his actions and his overall life. He fully understands the seriousness of his underlying conduct. He understands that associating with groups such as the Goyim Defense League almost always leads to trouble. He understands that none of his political viewpoints are worth doing things that are unlawful.

8

This change of perspective reflects a man who has used his time in custody to appreciate the consequences of his actions. Mr. Cash no longer wants to engage in the conduct that led to this conviction. He no longer wants to associate with bad actors. Instead, he wants to move forward with his life by first engaging in mental health treatment. He also wants to find work and continue building a career in information technology. He is remorseful and embarrassed by his actions. As such, a sentence of probation is warranted due to the deterrent effect incarceration has had on him.

### III. CONCLUSION

Mr. Cash is a first-time offender, convicted of a serious, but relatively minor offense. In light of the above submissions by the defense and the purpose of the factors articulated under 18 U.S.C. § 3553(a), Mr. Case requests the Court accept the terms of the plea agreement and impose a three-year sentence of probation.

Respectfully submitted,

s/ *David Fletcher*
DAVID FLETCHER
Assistant Federal Public Defender
810 Broadway, Suite 200
Nashville, Tennessee 37203
615-695-6951
David_fletcher@fd.org

Attorney for Patrick Cash

## CERTIFICATE OF SERVICE

       I hereby certify that on November 19, 2024, I electronically filed the foregoing *Memorandum Addressing Sentencing Factors* with the U.S. District Court Clerk by using the CM/ECF system, which will send a Notice of Electronic Filing to the following: Joshua A. Kurtzman, Assistant United States Attorney, 719 Church Street, Suite 3300, Nashville, Tennessee, 37203.

                                      s/ *David Fletcher*
                                        DAVID FLETCHER